**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**FERDINAND PAUL AUTERY (#313537)** **CIVIL ACTION**

**VERSUS**

**WARDEN BURL CAIN, ET AL.** **NO. 15-375-SDD-RLB**

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on May 3, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**FERDINAND PAUL AUTERY (#313537)** **CIVIL ACTION**

**VERSUS**

**WARDEN BURL CAIN, ET AL.** **NO. 15-375-SDD-RLB**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Motion to Dismiss filed by defendants former Warden Burl Cain and Assistant Warden Stephanie LeMartiniere (R. Doc. 20). This motion is opposed. *See* R. Docs. 33 and 34.

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against former Warden Burl Cain, Assistant Warden Stephanie LeMartiniere, Optometrist Glenn Coullard, and Assistant Shirley Ott alleging violations of his constitutional rights through deliberate indifference to his serious medical needs. The plaintiff seeks monetary and injunctive relief.

In the instant motion, defendants Cain and LeMartiniere first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's claim against the defendants in their official capacity. In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official

capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, the plaintiff's claims asserted against defendants Cain and LeMartiniere in their official capacity for monetary damages are subject to dismissal. In contrast, the plaintiff's claims for monetary damages asserted against these defendants in their individual capacities remain viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id*. at 29. The plaintiff's claim for prospective injunctive relief asserted against these defendants in their official capacities also remains viable because such a claim is not treated as a claim against the state. *Will v. Michigan Department of State Police, supra*, 491 U.S. at 71 n.10. Of course, the plaintiff must be able to prove a deprivation of his constitutional civil right in order to obtain any entitlement to relief.

Turning to the plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, defendants Cain and LeMartiniere next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id*. (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint as amended, the plaintiff alleges the following: Between March 5, 2012 and May 7, 2014, on ten occasions defendant Dr. Coullard ignored the plaintiff's complaints regarding ill-fitting contact lenses and dry eyes, until a referral to an ophthalmologist was made on February 3, 2014. The plaintiff was seen by Dr. Jane Weiss, an ophthalmologist, via telemed, and on May 7, 2014, Dr. Coullard performed a "Shirmer" test per the order of Dr. Weiss. The results indicated moderate dry eyes. The plaintiff contends that because Dr. Coullard did not test for dry eyes for two years, the plaintiff lost the use of his right eye on September 15, 2014.

Beginning in July of 2013, the plaintiff made complaints of pain to Assistant Shirley Ott, who is responsible for all scheduling in the eye clinic. Ms. Ott falsely stated that a referral to an

ophthalmologist had been made, but the referral was not made until February 3, 2014. On January 28, 2015 and February 9, 2015, the plaintiff made sick calls regarding pain in his right eye. The plaintiff also wrote to the eye clinic regarding his complaints of pain in his right eye and requested an expedited appointment. On March 12, 2015, the plaintiff spoke with Ms. Ott in the eye clinic to again request an expedited appointment. Ms. Ott informed the plaintiff that he already had an appointment scheduled and told the plaintiff to stop bothering her. On March 25, 2015, the plaintiff was seen by Dr. Coullard who found irritation and inflammation in the plaintiff's cornea and prescribed "Neomycin and Polymixin B Sulfates and Dexamethasone" ophthalmic suspension for 60 days.

Dr. Coullard recommended "Systane Ultra" artificial tears to treat the plaintiff's degree of dry eyes, and the plaintiff's family was initially allowed to mail these drops to the plaintiff because they are not available in LSP's pharmacy. In March of 2015, Assistant Warden Stephanie LeMartiniere issued a memo stating that all outside purchases had to be pre-approved by her. The memo was issued after several shipments of "Systane Ultra" artificial tears were returned to the plaintiff's family without explanation. On June 9, 2015, the plaintiff was informed by LeMartiniere that the "Goodsense" drops available at LSP were a reasonable accommodation for his condition. Since the time LeMartiniere began denying the plaintiff access to the "Systane Ultra" artificial tears, the plaintiff has been treated for irritation and inflammation on two occasions. LeMartiniere also refused to provide the plaintiff with "Refresh" artificial tears which are a suitable alternative to the "Systane Ultra" drops. LeMartiniere is also prohibiting the plaintiff from seeing Dr. Weiss in person, although an in person examination was recommended if the plaintiff's condition did not improve. LeMartiniere

has informed the plaintiff that only prisoners with "life and death" situations are being transported from LSP to outside providers, and that his condition does not qualify for transport.

Former Warden Burl Cain was notified of the plaintiff's condition via correspondence from the plaintiff's family dated April 2, 2014. Nevertheless Warden Cain refused to transport the plaintiff to the office of Dr. Leon LaHaye who had treated the plaintiff in the past and offered to see the plaintiff at no expense to LSP. Warden Cain is responsible for the transportation policy implemented by LeMartiniere which only allows for certain prisoners to be transported for treatment at outside facilities.

In response to the plaintiff's allegations, the defendants have asserted that they are entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendants contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's federal constitutional or statutory rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id*. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id*.

Undertaking the qualified immunity analysis, the Court finds that the defendants' Motion should be granted. Specifically, the Court concludes that the plaintiff's Complaint, as amended, fails to state a claim for deliberate indifference to his serious medical needs, and that his claims against defendants Cain and LeMartiniere should be dismissed.

Regarding the plaintiff's claim of deliberate indifference to his serious medical needs, in order for there to be liability in connection with a claim of deliberate medical indifference, an inmate plaintiff must allege that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble*, *supra*. Nor do negligence, neglect, unsuccessful treatment, or even medical malpractice, give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994). As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), *quoting Estelle v. Gamble*, *supra*. Further, a mere delay in providing medical

treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993).

As to former Warden Cain, the plaintiff alleges that Cain refused to transport the plaintiff to the office of Dr. Leon LaHaye for treatment. As to Assistant Warden LeMartiniere, the plaintiff alleges that LeMartiniere chose "the cheaper less effective route of treatment" by providing him with one brand of artificial tears rather than the brand recommended by Dr. Coullard. The plaintiff is not entitled to treatment by medical providers of his choice, *see Terrell v. Mertz*, 2015 WL 5475219, *3 (S.D. Miss. Sept. 17, 2015), nor is he entitled to the best possible medical care that may be available. *See Mayweather v. Foti*, 958 F.2d 91(5th Cir. 1992); and *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978). *See also Burton v. Owens*, 511 Fed. Appx. 385, 389 (5th Cir. 2013) (substitution of one pain medication for another does not constitute deliberate indifference); *Barnes v. Milam County Sheriff's Dept.*, 378 Fed. Apx. 430, 431 (5th Cir. 2010) (allegations that jail officials changed the plaintiff's medications state, at best, a claim of malpractice or of negligence, neither of which is actionable under § 1983); and *Early v. Dallas County Jail's Medical Doctors*, 163 F.3d 1356 (5th Cir. 1998) (allegations that doctor prescribed a less expensive blood pressure medication which was not as effective as the medication the plaintiff was taking prior to being incarcerated constitute at most negligence or medical malpractice which do not give rise to a § 1983 claim).

As the District Judge has previously noted, while the plaintiff is unhappy with his medical care, his allegations make clear that his complaints have not been ignored and that he has been provided with treatment believed to be appropriate for his condition, including medications and examinations by multiple specialists. *See* R. Doc. 15. His allegations demonstrate only a disagreement about what medical treatment is appropriate for his condition, a

claim that is not sufficient to establish an unconstitutional denial of medical care. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Accordingly, the plaintiff's Complaint, as amended, fails to state a claim for deliberate indifference to his serious medical needs against defendants Cain and LeMartiniere.

**RECOMMENDATION**

It is the recommendation of the Magistrate Judge that the defendants' Motion to Dismiss (R. Doc. 20) be granted, dismissing the plaintiff's claims against defendants former Warden Burl Cain and Assistant Warden Stephanie LeMartiniere, with prejudice, for failure to state a claim upon which relief may be granted.

Signed in Baton Rouge, Louisiana, on May 3, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**